## Engle, et al. v. Bond Foley Lumber Company, et al.

### (Decided December 15, 1916.)

### Appeal from Jackson Circuit Court.

1.  Deeds—Cancellation of Instruments.—One possessing the title to land, although not in possession, may maintain a suit to cancel an outstanding adverse deed.
2.  Officers—Facts Which Officers May State.—The facts which an officer may state in a matter about which the law requires a statement from him, and which may not be questioned except in a direct proceeding for fraud or mistake on the part of the officer, are such facts as the law requires him to state and do not include extraneous facts which he is not required to make by any provision of law.
3.  Evidence—Recitation of Statement in Writing.—A recitation of a statement or of a fact in a writing which the one executing it is not required to make, and which is extraneous to the matter in hand, is not evidence of the fact either for or against a stranger to the writing.

A. W. BAKER for appellants.

C. C. WILLIAMS, MOORE & LITTLE and H. J. JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The purpose of this suit brought by the heirs of James F. Engle in the Jackson circuit court on May 26, 1914, is to procure the cancellation of a deed which appellee,

Bond Foley Lumber Company, holds to a tract of 100 acres of land situated in that county, it being charged in the petition that James F. Engle, the father of appellants, they being his only heirs, was the son of Thomas J. Engle, deceased, and that the latter was the owner of the land in controversy and that in the division of his estate among his heirs said tract was allotted to the father of appellants and they inherited it from him.

The answer consists of a general denial of all of the allegations of the petition; there were other matters pleaded in separate paragraphs, but under the conclusion we have reached it will not become necessary to consider any of them.

The testimony shows that the land is uninclosed. There is not now, nor has there ever been, any character of settlement upon it, it being entirely covered with virgin forest. There is, therefore, neither pleading nor evidence of any adverse possession. Upon final submission of the cause, the trial court dismissed the petition, and to reverse that judgment plaintiffs prosecute this appeal.

As the plaintiffs are not in possession, a question presented at the outset is whether they can maintain this character of suit, it being argued by defendants' counsel that an essential element to the right to maintain the suit is that plaintiffs should be in possession of the land. In a strictly technical suit to quiet title, as is given by section 11 of the Kentucky Statutes, this requisite is necessary, but it has been determined a number of times by this court that such possession is not necessary by the holder of the legal title to enable him to apply to a court of equity in order to procure the cancellation of an outstanding and adverse deed to the property, and we will content ourselves, without a further discussion of this point, by referring to the cases from this court so holding, they being, National Bank of Commerce v. Licking Valley Land & Mining Company, 15 Ky. Law Rep. 211; Packard v. Beaver Valley Land Company, 96 Ky. 253; Cornelison v. Foushee, 101 Ky. 261; Comth. v. Clark, 26 Ky. Law Rep. 993. Following the rule as announced by these cases, the court properly overruled a demurrer filed to the petition.

In this character of case, as in ejectment suits and those brought under the provisions of section 11 of the Kentucky Statutes, the plaintiff should be denied relief unless he establishes in himself a title such as the law

recognizes. In other words, he must recover upon the strength of his own title, and, if he fails to show legal title in himself, he cannot obtain the relief sought. This not only results from analogy of the rule in ejectment suits, and of the other class mentioned, but should necessarily follow a failure on behalf of plaintiff to establish his title to the land, for if he has no title, he suffers no wrong from an outstanding adverse one. In such case he would exhibit no right to the land, and the outstanding title would produce no wrong to him because all wrongs consist in the invasion of a right. It is also a rule of the physical world that the whole is no stronger than the weakest part. It is sometimes expressed by the homely phrase, "A chain is no stronger than its weakest link." The same rule is likewise true with reference to logical and legal propositions, so that if it should become incumbent upon a litigant, in order to succeed, to establish a series of acts to show a legal connection, such connection is not stronger than the weakest point in it. If, then, the title which plaintiffs show in this case is interrupted by a missing link in its chain, they have failed to establish a right to relief.

The supposed title to plaintiff's remote ancestor, Thomas J. Engle, grows out of the following facts: The land in question was patented by one Samuel Cooper, who sold it to John Reece on August 21, 1858. On January 16, 1860, the land was sold by J. M. Wood, the then sheriff of Jackson county, under the levy of an execution against Reece, for $7.50, and $13.00 costs. Upon the execution the sheriff made this endorsement: "Satisfied by sale of land. Commissioner of jury fund purchaser. This 16th day of January, 1860. James Wood, S. J. C."

In a book which is entitled "Records, Lands Sold Under Execution Jackson Circuit Court," there appears what purports to be a report of the sheriff's acts under the execution, and as a part of it, after reciting the levy and sale and describing the land, it is stated, "When and where Isaac J. Faubus, jury fund commissioner in Jackson county, bid the sum of twenty-two dollars and 24 cents for the whole tract, and no person bidding more or offering that amount for a less quantity than the whole the same was openly struck off and sold to the said jury fund commissioner for the sum bid by him as aforesaid." This report is not signed by the sheriff or anyone else. Waiving the point as to what force and effect that should

be given this unsigned report but treating it as valid we find that nothing was done in the matter until April 27, 1867, when the same J. M. Wood, who had ceased to be sheriff of the county and was at that time its county court clerk, executed a deed to the heirs of Thomas J. Engle for the tract of land in controversy in which he recites the sale under the execution before mentioned, as well as describes the land and refers to the return made upon the execution and then makes this recitation: "The land being bid off by I. J. Faubus for the benefit of T. J. Engle, at the price of twenty-two dollars and 24 cents, I do, this day, convey to the heirs of T. J. Engle, deceased, all of the right and title to the said tract of land that passed to T. J. Engle by virtue of the purchase made under the sale, etc."

At the time of the making of this deed by the former sheriff, T. J. Engle had been dead for some five or six years. After the making of the sheriff's deed, which was immediately recorded, it is claimed that the lands of Thomas J. Engle were divided among his heirs by a proceeding for that purpose had in the county court of Jackson county, and the one hundred acres in controversy here was allotted and deeded to the father of plaintiffs as one of the heirs of Thomas J. Engle.

Although not necessary for the determination of this case, it might be proper to say that defendants claim title through a deed executed by virtue of the execution sale by a subsequent sheriff of Jackson county to I. J. Faubus, who sold the land to a man by the name of West from whom there is a regular chain of title to the appellee. Furthermore, after the suit was filed, appellee obtained quit-claim deeds from all of the heirs of John Reese, and by amended answer relied upon such deeds. But it is not necessary, as stated, for us to pass upon the validity of the title of appellees if appellants have failed to show title in themselves.

There is no evidence to be found anywhere in the record showing that I. J. Faubus, who was the jury fund commissioner for Jackson county, purchased the land "for the benefit of T. J. Engle," as recited in the deed from ex-sheriff Wood, save and except that recitation, and it plainly refutes the record which Wood made and attempted to make at the time of the sale. The question, then, is squarely presented whether the recitation he

makes in the deed to the heirs of Thomas J. Engle is evidence of the fact therein stated.

Before entering upon the discussion of the question it will be necessary to notice the contention of appellants that, inasmuch as the ex-sheriff was performing official duties when he executed the deed, no fact stated by him in the deed can be called in question except upon a direct attack for fraud or mistake on the part of the officer making it, as is provided by section 3760 of the Kentucky Statutes. We are clearly of the opinion that the rule stated in that section has no application to the situation with which we are dealing. It plainly applies to the statement of facts which it is necessary under the law for the officer to state as constituting his authority for making the statement or doing the thing in which the statement is made. It can evidently have no application to purely an extraneous statement having no connection with the performance of his official duties. By way of illustration, in this case the statement in the deed as to the levy of the execution and the sale under it, and other preceding steps required by the sheriff and which were necessary in order to effect the sale may be conclusively presumed to have been done from a recitation of them made in the deed. To state, however, that there had been a private contract or agreement between the actual and reported purchaser and another, without any evidence in writing, of record or otherwise, of such agreement or contract, is the statement of purely an extraneous fact, and one to which the section of the statute, *supra,* does not apply. The case, then, is one upon the same plane as if the recitation was made in a deed executed by a private individual.

The rule seems to be universal that recitations in deeds bind the grantor and his privies in estate, but can have no effect upon strangers. After reciting the rule as to the effect of the recitation upon parties and privies, the author of Cyc., in volume 13, page 612, says:

"The above general rule is limited in its operation to the persons therein specified, and it does not include strangers or third parties, or those not claiming under the deed."

Many authorities from numerous states are cited in support of the text, but we do not deem it necessary to incorporate them in this opinion, for the rule has received the sanction of this court in numerous cases, some of

which are Hite v. Sharader, 3rd Litt. 444; Smith v. Shackelford, 9th Dana 452; Edwards v. Ballard, 14 B. M. 233; Whittaker v. Garnett, 3 Bush 402; Goins v. Allen, 4 Bush 608; Dennis Brothers v. Strunk, 32 Ky. Law Rep. 1230; Carlisle v. Carlisle, 9 Ky. Opinions 174. An excerpt from some of the cases only will suffice to show the holding of this court upon the question under consideration. In the Hite case it is said:

"The conveyance in this case, made by the executor to the complainants, recites that it was made in fulfillment of a written obligation of the testator; and if the obligation had been proved, it would have been sufficiently shown that the deed was made in strict compliance with the power given to the executor by the will. But, except the recital contained in the deed, there is no evidence of the obligations; and the law is that a deed, reciting another deed is evidence of the recited deed, against the grantor and those claiming under him, but is not evidence against a stranger."

In the Whittaker case the rule is thus stated:

"As said by this court in Edwards v. Ballard (14 B. M. 290), statements and recitals of facts in a deed, as a general rule are evidence between the parties to it. But not so where third parties are concerned, and the fact to be established affects the validity of the title; that, whilst such recitals are binding on parties and privies, yet, as a general rule, such recitals cannot be used as evidence against strangers for any purpose."

In the Dennis case, upon the precise point under consideration, the court says:

"Ordinarily recitals of extraneous facts in a deed are not evidence of the facts stated as against strangers, although they are binding upon the parties and their privies. . . . . If George Marlow had sold the land to vendors of appellant, and a controversy had come up between appellants and appellees as to the ownership, it is clear that the recitals would not be competent."

In the Carlisle case the same question we have here was presented. The recitation in that case containing the fact sought to be established was made by a sheriff in his official capacity, but it was not one which it was his official duty to make, and the court held that his recitation of the extraneous fact was no evidence of its existence, saying:

"It is unquestionably true that when it is the duty of a public officer to act, and to make a return showing what he did in the performance of his duty, his return is *prima facie* evidence of its own truth. But his return is not evidence of any other fact, and does not prove that he had authority to act."

Were the rule otherwise, sheriffs, or succeeding ones, in cases like this, could, by a mere statement in a deed, executed in many instances long after the original transaction, divert the title entirely from those who in law would be entitled to it, and there would thus be placed in their hands an opportunity for the perpetration of gross and most damaging frauds.. Moreover, in their very nature such statements are hearsay, only, and unless there exists some valid reason why the salutary rule forbidding the introduction of hearsay evidence should not apply, or that an exception to it should be allowed, such evidence ought to be discarded. We are convinced that no such reason is found to exist here. The doctrine of the text books and the opinions from this court, *supra*, denying efficacy to such recitations as against strangers is a wholesome one, and again receives our hearty endorsement.

As appellants thus failed to show a valid title to the land in their remote ancestor, T. J. Engle, the court properly dismissed the petition, and the judgment so directing is affirmed.