# Hopkins v. Slusher.

(Decided Nov. 27, 1936.)

J. M. GILBERT for appellant.

HIRAM H. OWENS and D. M. BINGHAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The sole question involved on this appeal is whether or not the appellant and plaintiff below, I. L. Hopkins, was at the time of the filing of this action or since then the owner of a tract of land in Knox county containing 83 acres which was patented to Isaac Mills, Sr., on February 3, 1891. The action was filed in the Knox circuit court by plaintiff against defendant and appellee, C. B. Slusher and another, on March 27, 1918; but judgment therein was not rendered until July 6, 1935, thus entitling the case to be listed as a Rip Van Winkle litigation. At the outset and upon the filing of the petition, plaintiff procured a restraining order from the clerk of the court enjoining defendants from interfering with his possession or title, and which clung to the case throughout its long career in the circuit court, no steps having been taken to dissolve it.

Plaintiff in his petition alleged generally that he was the owner and in the possession of the described tract of land. He also specially pleaded that he and those under whom he claimed title had adversely occupied it and possessed it for a sufficient length of time to mature an adverse possessory title. Both general and special allegations of ownership were denied by defendants (to be hereafter referred to in the singular) and Slusher also averred his ownership of the land, and said in one paragraph of his answer that he "is entitled to the immediate possession of said land and ought to recover the same from the said plaintiff and his agents and tenants, and he prays the petition be dismissed" and for judgment for $100 damages. He likewise in his answer made the special plea of title by adverse possession. Following pleadings made the issues and the case then began its long sleep. During its sojourn in the circuit court and in the latter part thereof proof was taken by the respective sides and after submission the court first rendered judgment in favor of plaintiff, but on the same day of the term or on the next day he set that judgment aside and rendered one dismissing plaintiff's petition and adjudged that defendant Slusher was the owner of the land. To reverse it, plaintiff prosecutes this appeal.

Before taking up what we have said was the decisive question, we deem it appropriate at this point to say that neither party proved adverse possessory title. They did prove, however, that plaintiff and those under

whom he claimed at different short and abandoned periods were in possession of some portion of the land and the same is also true with reference to defendant's alleged adverse possession; but neither of them proved continuous adverse possession of the nature, kind, and extent required by the law in order to effect a transfer of the title. We must, therefore, look to other sources of title about which testimony was heard in order to solve the decisive question, supra. The only one on which plaintiff relies to establish title in himself (excluding the one that we have denied) is a sheriff's deed executed to him on May 28, 1908, which purports on its face to have been made by the then sheriff of Knox county, Dan H. Williams, pursuant to a sale of the land on December 23, 1907, under a levy of an execution that the sheriff had made on the land as the property of the supposed judgment defendant issued in favor of the plaintiff, I. N. Hopkins, and against Isaac Mills, Sr., the patentee of the land. The deed recites the number of the execution, and that it issued "from the clerk's office of the Knox circuit court on the 7th day of October, 1907, in favor of I. N. Hopkins, and against Isaac Mills, for the sum of $300.00 and for $14.95 costs." The deed also further recites that the execution was delivered to the sheriff on that day and while it was in force and effect he levied it on the land and that he advertised its sale, under the levy, for December 23, 1907; that the sale was to be held at the courthouse door, which was done, and that Hopkins became the purchaser at the sum of $175, the land having been appraised, according to the recitation in the deed, at the sum of $172.

That deed came into the record this way: When plaintiff was giving his deposition, he was asked by his counsel if he was the owner of the land, to which he made an affirmative answer. He was then asked if he had a deed therefor and he made a like answer and filed his sheriff's deed as an exhibit with his deposition. He also stated that he in person had posted the advertisement of the sale on the land—as the law requires—at the instance of the sheriff, and that in some manner he got possession of one of the advertisements and had preserved it. He was requested to and did file that advertisement, which is in the usual form and contains, in substance, the same recitals and no more than what we have stated was contained in the deed. In neither the advertisement nor the deed is it stated (except by in-

ference) that any judgment was ever rendered by the Knox circuit court for any sum in favor of plaintiff, Hopkins, against Isaac Mills, Sr., the supposed defendant in the execution or case in which the judgment is supposed to have been rendered. The inferential recital of that fact is the one saying that the execution issued from the Knox circuit court in favor of Hopkins against Mills for the sum of $300 and the costs. The two papers to which we have referred are the only ones in this entire record bearing in any manner upon the existence of the alleged judgment in favor of Hopkins against Mills, nor did any witness state orally that any such judgment was ever rendered, or, if so, that Mills was served. We are, therefore, confronted with the single question as to whether in the circumstances the deed, purportedly executed by the sheriff to plaintiff, is, because of its recitals, sufficient to prima facie establish the legal transfer of the title to the land from Mills to Hopkins?

Before directing our attention specifically to answering that question, attention should be called to the state of the pleadings, which, it will be remembered, did not attempt to specify or rely upon any special mode or manner by which plaintiff became vested with title to the land, except the one relying upon adverse possession— but which was unnecessary to be made, since the general averment of title and ownership was broad enough to admit proof of any method by which he acquired title. Likewise, defendant's denial in his answer that plaintiff was the owner or possessed title to the land put in issue any and every mode or manner by which that acquirement was obtained, and when plaintiff thereafter sought to establish title in a particular mode or manner it was incumbent upon him to make the same character of proof necessary to be made if plaintiff had specifically averred the mode by which he acquired title and defendant had in terms denied it. Having said this much, we will now address ourselves to a determination of the only relevant question in the case, which is the one stated, supra.

The question, like many others in the law, is somewhat confused in the absence of a specific statute upon the subject, and there is none in this jurisdiction. Of course, where there is a statute regulating the effect of recitals in the character of deed here involved, the rights of the parties would be determined in accordance therewith, since it is competent for the Legislature to so pre

scribe; but in the absence of any statute, courts are at variance as to the probative effect to be given such recitals in the deed made by the officer who made the sale when there is an entire absence of any proof outside of them of the matters and things so recited. Some courts hold that if a deed of the nature here involved recites the recovery of a judgment upon which the execution issued, it is prima facie evidence that such judgment was rendered, and that it was properly rendered; while others, and probably a majority of them, deny that effect as to such recitals, in proof of matters that occurred before the issuance of the execution and its delivery to the officer to execute. Perhaps all of the courts hold that recitations by the officer as to the acts which the law required him to do in order to legally effect the sale under the execution in his hands after he received it may be established, at least prima facie, from the recitals that he makes in his deed to the purchaser of the property.

The condition of the law as so described is thus stated by Mr. Freeman in his latest work on Executions, volume 3, page 1910, sec. 329: "In other words, his recitals are but the history of what he has done under a valid writ, but if the writ or the antecedent proceedings are invalid, or, though valid, for some purposes cannot authorize the acts done, the officer is not vested with power to become the accredited historian of them. Except as to these preliminary indispensables, the recitals are prima facie, but not conclusive, evidence of the facts stated in them, in so far as such facts are material to support or to overthrow the conveyances. On the other hand, as to matters essential to the existence of an officer's authority to act, his deed, whatsoever be the recitals therein, is not even prima facie evidence." See Engle v. Bond Foley Lumber Co., 173 Ky. 35, 189 S. W. 1146.

In a prior part of that section and on page 1909, the text of the learned author says: "In truth, the more important facts, such as the rendition and entry of the judgment, and the issuing of the execution, cannot, in most states, be established by the recitals in the deed. The judgment and execution must be offered in evidence, unless, though once existing, their production has become impossible." On page 1930, in section 334, quoting from the case of Hihn v. Peck, 30 Cal. 280, 288, the learned author approves this: "The power to sell, to recite, and to deed, having its origin in the judgment and

execution, must be proved by a production of both under the rule of best evidence; but when the power has been so proved, the Sheriff becomes, so to speak, the accredited historian of his acts under it. He may narrate his proceedings on the back of the execution and return it into Court, and, with or without that, he may issue a certificate to the purchaser, and both the certificate and return, if made, would, within the limits of the authority delegated to him, be evidence against all persons of the facts stated or recited therein."

The text in 10 R. C. L. page 1361, sec. 156, says: "A variety of opinions, due partly to statutory enactments, exists as to the value of the sheriff's deed on execution sale as evidence to support the purchaser's title." After reciting some of the cases producing such variety of opinions, and in a later part of the section, the editors of the text say: "So also it has been held repeatedly that the purchaser at a sheriff's sale, to support his title thereunder, must not only offer his deed in evidence, but must also show a valid judgment to support the deed." The supporting cases of Dufour v. Camfranc, 11 Mart. (O. S.) (La.) 607, 13 Am. Dec. 360; Den ex dem. Swan v. Despreaux, 12 N. J. Law, 182, 22 Am. Dec. 485; Darby's Lessee v. Russel, 5 Hayw. (Tenn.) 139, 9 Am. Dec. 767, are cited in note.

The text in 23 C. J. 743, under the heading "Judgment and Execution," says: "In the absence of statute giving evidentiary value thereto, the recitals of the deed are not evidence of the entry of judgment and issuance of execution, except where there is privity between the parties, or where the execution or record is lost. In some jurisdictions, however, the statutes require the sheriff's deed to recite the judgment, execution, and sale, and such recitals are, by statute, made evidence of the facts therein stated, and relieve the party claiming under the deed from the necessity of producing the judgment and writ of execution, and put the onus upon the party contesting the deed to establish the invalidity of the sale or the judgment by virtue of which it was made. A deed not containing the recitals mentioned in the statute, or not showing a compliance with the law on its face, is inadmissible as evidence, unless the judgment and execution are proved aliunde." See annotation in 36 A. L. R. beginning on page 986.

This court in the early case of Terry v. Bleight, 3 T. B. Mon. 270, 16 Am. Dec. 101, had before it a similar

question wherein a similar deed was relied on. In determining and disposing of the question, Judge Mills, in writing for the court, said: "He has produced a conveyance from the sheriff, and an execution under which the sale purports to have been made, but has produced no judgment. As the Acts of this State, permitting lands to be sold for the payment of debts, only tolerate the sales to be made in satisfaction of judgments, the judgment is a necessary muniment of the title, and it has always been held by this court, that the production of the judgment is indispensable. The court, therefore, did not err in refusing the complainant below any relief."

In the considerably later case of Swafford v. Herd's Adm'r, 65 S. W. 803, 23 Ky. Law Rep. 1556, practically the identical situation existing here was presented for determination and its disposition followed the authorities supra. Judge O'Rear, writing for the court, said: "The deed from the deputy sheriff making the sale to the purchaser, Dr. William Reid, was exhibited. It was objected to upon the ground that the judgment roll and execution were not also exhibited. We think the objection well taken. 2 Greenl. Ev. 316." Citing also the case of McGuire v. Kouns, 7 T. B. Mon. 386, 18 Am. Dec. 187. The identical question was presented in the still later case of Lowther Oil & Gas Co. v. McGuire, 189 Ky. 681, 225 S. W. 718, 719. In disposing of it, we said: "The law seems to be well settled that a purchaser at a sheriff's sale of real estate under execution, in order to support his title, must not only offer his deed in evidence, but must also prove a valid judgment." The R. C. L. citation, supra, is referred to as well as the McGuire and Swafford Cases, and also the reference to Freeman on Executions in support of that statement. However, the opinion proceeded to state that the pleadings in that case were insufficient to raise the issue of the existence or non-existence of the judgment as the foundation for the sale by the sheriff, and, therefore, the general rule as so stated would not apply under the peculiar facts of that case. But here, as we have seen, the pleadings were so framed as to put in issue every fact necessary to establish plaintiff's title and which, of course, included the existence of the judgment upon which the execution issued as a foundation for the sheriff's sale at which plaintiff became the purchaser of the land and later received his deed from that officer.

There was no offer by plaintiff to prove the judgment in this case, nor was there any fact proven remotely intimating his inability to do so because of loss of records, or for any other reason; nor was any effort made to show that the alleged defendant in that judgment whose land was sold (he being the original patentee) was summoned in the case in which the alleged judgment was rendered—each of which facts were necessary in order to establish the validity of the execution. However, as we have hereinbefore pointed out, the sheriff did not pretend to recite in his deed, except by inference, that there was such a judgment in existence. We think, in the circumstances and under the law as so established, that plaintiff failed to prove his title under the sheriff's deed, and the court properly denied the prayer of his petition to adjudge him the owner of the land in controversy.

But it is said that although plaintiff so failed the court erred in adjudging the defendant Slusher to be the owner of the land, and which is based upon the contention that he did not pray for such relief. We have hereinbefore said that he stated in his answer that he ought to recover the land from plaintiff because he himself was also the owner of it, and he closed his prayer in the usual way "for all proper relief." We think that was sufficient to entitle the court to adjudge him the owner of the land, if the evidence justified it. But it is further contended that the evidence did not so justify and, therefore, the court erred in so adjudging the title to him. A sufficient answer to that contention is that plaintiff has no interest in the land if he himself does not own it, and it is no concern of his as to who the court determined was its true owner. However, under the evidence defendant did own at least one-half of the land, being the part that the widow of Grant Taylor obtained in a deed executed in 1899 by Isaac Mills, Sr., to Grant Taylor and wife, "parties of the second part." Before that deed was delivered, the husband died and it was later turned over to his widow and she afterwards conveyed whatever interest she had to defendant. The deed from Isaac Mills, the delivery of which was so deferred, did not have the effect to vest Grant Taylor with any interest in the land, since it was not delivered to him during his lifetime; but it did vest in his widow, a joint grantee, the extent of the interest that the deed conveyed to her, which was one-half. To that extent at least de-

fendant proved title. No one, except plaintiff, is here complaining of the judgment vesting the entire title in him, and strangers to the case who might own the other half interest that the deed of Isaac Mills did not convey because of lack of delivery of his deed, will not be bound by this judgment, but will be free to litigate that question in the future, if they see proper to do so before their rights become barred.

For the reasons stated, the judgment is affirmed; the whole court sitting.