## Moore et al. v. Marcum et al.

(Decided April 30, 1937.)

E. C. HYDEN for appellants.

GRANNIS BACH for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This equity action was filed in the Breathitt circuit court by appellees and plaintiffs below, Abrelia Marcum et al. (referred· to in the record as the "Marcum heirs"), against the appellants and defendants below, Samp Moore et al. (referred to in the record as the "Spicer heirs"). In the petition plaintiffs averred that they were the owners of a described tract of land

of about 200 acres located at and surrounding the junction of Stone Coal branch with Georges branch in Breathitt county, Ky. They further averred that defendants were wrongfully asserting title to the land and thereby creating a cloud upon plaintiffs' title; that defendant Samp Moore had actually taken possession of a house located on the disputed land, and they prayed for injunctive process against him to prevent his alleged trespasses and for final judgment quieting their title, which they averred was one of record from the commonwealth, and also that they had acquired it by adverse possession. Defendants denied the material averments of the petition and asserted title in themselves both from the commonwealth, and by adverse possession. They also pleaded a former judgment of the Breathitt circuit court in bar of plaintiffs' right to maintain the action. One of the defendants, Fulton Allen, in addition to making the defenses above referred to, also alleged that he was the owner and in possession of 20 acres of the land described in the petition (and which he described in his answer), the title to which he obtained under an execution sale made by the sheriff of the county and which issued against plaintiffs to recover the costs adjudged against them in the res adjudicata suit above referred to.

The record, consisting of three volumes, is honeycombed with pleadings, amendments thereto, motions, and other confusing steps, but which, after all, raises the issues above outlined as contained in the original pleadings of each side. The clerk in copying the record paid no attention whatever to section 5 of Rule III of this court requiring pleadings and orders to be copied in a record sent here "in the order in which they were filed or tendered," and as a consequence we find many of the pleadings and orders made and filed at one stage of the progress of the case preceded by other similar orders made at a much later stage of the progress of the case, and which is true practically throughout the record— thus confusing it in such a manner as to render it extremely difficult to grasp and understand. For such violation he is hereby penalized by deducting $15 from his taxed costs for making the record, and which he is adjudged not to be entitled to collect from anyone. Because of the confusion thus produced we were compelled to read this record three times in an effort to familiarize ourselves therewith.

In the pleadings of defendants, in addition to their denials and the res adjudicata defense referred to, they set out and proved a number of prior forcible entry and detainer proceedings instituted by some of them in an attempt to assert their right of possession under their title against plaintiffs or their tenants and in each of which defendants herein (plaintiffs in the forcible detainer proceedings) were successful. Of course such proceedings are not necessarily a bar to an action contesting the title; but they do show that such periods of possession by plaintiffs through the evictions in those forcible detainer actions were wrongful and, when so interrupted by such adverse judgments, the required continuity of possession of plaintiffs to ripen title by adverse possession was broken and could not be tacked to the future acquired possessions in order to ripen title.

The testimony developed—with reference to each side's record title—these facts: That the commonwealth of Virginia on January 26, 1787, issued a patent to one Thomas Franklin for slightly more than 116,000 acres of land, and the proof clearly shows that the involved land in this action is within the boundaries of that patent, although plaintiffs disputed that fact. On March 12, 1844, one Edward Strong obtained a patent from the commonwealth for 100 acres of land embracing the location where the only residence on the contested land was built and which it was alleged the defendant Samp Moore had recently taken possession of. Following the entry and survey for issuing of the Strong patent, one Thomas Marcum on September 10, 1872, laid and obtained a patent from the commonwealth for 190 acres, embracing a large part of the Strong patent, and all of which was also within the Franklin patent. On the same day Alfred Marcum obtained a patent from the commonwealth for 250 acres entirely within the Franklin patent and embracing all of the Strong patent which was not covered by the Thomas Marcum patent. On March 1, 1875, the same Alfred Marcum obtained a patent for 174 acres lying entirely within the Franklin patent and lapping upon portions of other patents referred to. A map was prepared by John B. Conley, a competent surveyor, showing the location of all of the referred to patents, except the Franklin one, and that map with its different colored lines representing outside boundaries of the Ken-

tucky patents referred to bears a strong resemblance to a Chinese puzzle.

To make a statement of even the substance of the testimony of each witness who testified in the case bearing upon the issue of adverse possession would require the assumption of a task almost interminable, and the facts as so detailed would be of comparatively no service to the profession, nor of any value to the litigants. We will therefore not undertake it when we reach the discussion of acquisition of title by adverse possession relied on by both plaintiffs and defendants. Plaintiffs claim record title through some one or more of the Marcum patents above referred to, but each of which, as will be seen, was later than the Edward Strong patent under which defendants claim similar title. However, the fact is, as we have stated, that all of the Kentucky issued patents were within the boundaries of the Franklin Virginia one.

Section 4704 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, in so far as in point here, is an ancient enactment. A part of that ancient statute was and is that "None but vacant land shall be subject to appropriation under this chapter. Every entry, survey, or patent made or issued under this chapter shall be void, so far as it embraces lands previously entered, surveyed, or patented." In numerous cases we have held that the inserted provision applied to patents issued by the commonwealth of Virginia while Kentucky was a part of it and before it became an independent state. One of the cases so holding, and which we deem to be sufficient for the purpose of establishing the principle, is that of Davis v. Davis, 157 Ky. 530, 163 S. W. 468. That being true, its inevitable effect is to destroy plaintiffs' record title, and to likewise destroy the same title relied on by defendants, but for the fact that they also claim title through the Franklin patent, which their ancestor acquired under a deed executed by the auditor of the state of Kentucky in 1846 in some sort of proceeding to collect taxes due the commonwealth from the owners of the Franklin patent, and in which the land covered by that patent was sold and was purchased by a Mr. South jointly with others, and that defendants are the descendants and heirs of the purchaser, South, under that auditor's deed.

The regularity of that sale is disputed, and there

106

is cited to us the case of Morse V. South (C. C.) 80 F. 206, an opinion by Judge Barr, late District Federal Judge for the Western Federal District of Kentucky, in substantiation of plaintiffs' contention that the alleged title of defendants through the Franklin patent could not be sustained because, as held by Judge Barr in that opinion, the sale of the Franklin patent, under which the auditor's deed relied on by defendant was made, was without authority and void. However, the South heirs, under whom defendants claim, were not parties to that litigation, as is expressly recited in Judge Barr's opinion, and the only way or manner that the opinion was brought into this case was in argument. No pleading was filed either relying upon or attacking that judgment, and it could have at most only evidentiary effect, as so brought into the case, even if the South heirs had been parties therein.

It thus appears that neither set of the adverse litigants in this case established record title to the contested land, unless it should be held that the auditor's deed, to which we have referred and through which defendants claim record title, was and is valid. No attack of it is made in any of the pleadings—except there is a denial that defendants obtained title through it.

When the execution of that deed was proven, as was done, then the only issue made by plaintiffs with reference to it was overcome, since there is no attack upon its validity. It would therefore seem that defendants, other than Fulton Allen, proved at least a prima facie record title, while plaintiffs utterly failed to do so.

We have carefully read and re-read the testimony in this case upon the issue of acquired adverse title by both sets of litigants and have reached the conclusion that plaintiffs failed to establish any such title. In order to do so it was incumbent upon them to prove that they, through themselves or tenants, had peaceably occupied the land to a well-marked boundary and claimed it as their own notoriously and against all other persons for a continuous uninterrupted period of as much as or more than fifteen years. The proof fails to show any such prior occupancy. On the contrary, it proves only an occasional occupancy which was later abandoned, or broken by judicial proceedings—to which we have referred—and that none of them was for any-

thing like the necessary period to ripen title by adverse possession.

On the other hand, we have reached the opposite conclusion with reference to the occupancy of defendants other than Fulton Allen. It is clearly shown that the Spicer heirs, who are descendants from the South to whom we have hereinbefore referred, occupied the Strong patent, claiming to own it to its well-marked boundary, for a continuous period of more than fifteen years before the various litigations referred to, and that they thereby ripened title in themselves to at least the extent of the outside boundaries of that (Strong) patent. There is a dearth of proof in the testimony as to whether or not they ever occupied any portion of the 200 acres described in the petition outside of the Strong patent, or, if so, the extent of such occupancy.

Plaintiffs in 1922 instituted an action in equity in the same court against defendants, or representatives of them, praying and asking for an injunction against a constable and his deputy, enjoining them from dispossessing plaintiffs under an adverse judgment in a forcible entry and detainer action, in which defendants herein were successful, and in that petition they claimed to be the owners and entitled to the possession of the same land involved in this case. However, they did not pray therein for an adjudication that they were the owners of the land, but only that they were entitled to the possession thereof, which they sought to protect by injunctive process. That action was answered substantially as was the petition in this case, and in 1931 an order was made dismissing the petition at plaintiffs' costs, from which they prayed and obtained an appeal to this court, but none was ever prosecuted. It is the judgment in that case that constitutes the foundation for the res adjudicata pleas in this case to which we have referred. The efficacy of it as a judicial estoppel is denied by plaintiffs by contending (1) that no such judgment was ever legally rendered, and (2) that, if one had been rendered, then the issues in that case were not the same as those in this one, since it was only what might be termed a possessory action and not one for quieting or determining the title. Some interesting questions are thus raised by plaintiffs in urging such objections to that judgment; but we will not undertake to determine them, since we have concluded that defend-

ants—other than Fulton Allen—have shown, as hereinbefore indicated, an acquisition of title by adverse possession for as much land as is contained in the Strong patent, and which conclusion is independently of their further reliance on the auditor's deed conveying to their ancestor, South, and others the land covered by the Franklin patent. Because of that conclusion the other matters herein referred to need not be further discussed.

The 20-acre tract claimed by the defendant Fulton Allen was, as we have stated, acquired by him through a sheriff's sale under an execution which issued against plaintiffs on the res adjudicata judgment relied on and which was levied on that amount of land claimed by them, and later sold by the sheriff when Fulton Allen became the purchaser, and to whom the sheriff later executed a deed therefor. Plaintiffs do not deny, in attacking that judgment, that one was rendered dismissing their petition whereby they became liable for the costs to recover for which the execution in which the land was sold to Allen issued. The judgment was introduced in the case, as were also the execution, and the proceedings of the sheriff under it—all of which were in conformity with the provisions of law with reference to such matters. Therefore the defect pointed out in the case of Hopkins v. Slusher, 266 Ky. 300, 98 S. W. (2d) 932, was overcome by the proof in this case, and the sheriff's deed to Fulton Allen, being regular on its face, conveyed to him whatever title the plaintiffs owned in the land sold thereunder, and the court erred, in not so adjudging.

We likewise conclude that the court erred, for the reasons stated, in adjudging plaintiffs to be the owners of the land in controversy as against the other defendants, and for which reasons the judgment is reversed, with directions to set it aside and to enter one in conformity with this opinion.