### New et al. v. Kinser.

(Decided March 22, 1938.)

PLEAS SANDERS for appellants.

R. H. CANNON and B. M. VINCENT for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

On February 1, 1934, the appellant A. G. New, and another whose interest he subsequently acquired, leased 75 acres to the appellee, Eugene Kinser, for three years for mining coal by stripping with a steam shovel. The lessee agreed to mine 100,000 bushels within twelve

months from the date of the contract on which he would pay lessor one cent a bushel royalty. Suit was brought by the lessor to recover a balance of royalties and certain damages. The defendant pleaded a breach of the contract by the plaintiff because of interference with the operation which compelled him to desist, and by way of counterclaim he asked damages for expenses incurred in testing and preparing the property for operation and loss of profits. A verdict was returned allowing no recovery to either party. The judgment was reversed because of the submission in the instructions of an issue which had been withdrawn. New v. Kinser, 265 Ky. 120, 95 S. W. (2d) 1106. On a second trial the verdict was for $100 in favor of the defendant, and the plaintiffs appeal.

The record is confusing. The clerk did not conform to section 5 of rule III of this court requiring him to copy the pleadings and orders in which they were filed or made. He did not show the dates on which the orders were made. It would seem that all of the pleadings were filed before the former judgment and the mandate of this court, but many of them appear later in the record. We cannot tell whether or not subsequent issues were raised after a reversal. In several cases the clerks have been penalized for such neglect. See Moore v. Marcum, 269 Ky. 101, 106 S. W. (2d) 117. Neither the court nor counsel could keep the plaintiff confined to the questions asked him, and his discursive speeches on the witness stand upon irrelevant and immaterial things, together with continuous colloquies of counsel, have made it difficult for us to understand his side of the case. Possibly the same is true as to the jury.

It appears that after operations had begun it was found that the overburden was too great to make it practical to get out the coal by the stripping method, and the contract was orally modified to permit tunneling. Kinser, who was not a miner, placed Reddish and Gaither there as his agents or subcontractors, and he went away. He claims that New later made a contract with those men to get out the coal for less royalty, and that in the meantime New had permitted others to mine coal from the area and had otherwise interfered with his operations and thereby first breached the contract. New denies the interference and claims, as we understand it, that he made no contract with these men until

after Kinser notified him that he was through and that he thereby abandoned and breached the contract first. New claimed a balance of minimum royalties because of the breach of the contract by Kinser, and Kinser sought to recover $600 for expenditures he had made in opening up the mine, which had enhanced the value of the plaintiff's property. Over against this New claimed that his property had been damaged $1,450 by Kinser's operations.

Instruction No. 1 authorized a verdict for the plaintiff for the $1,000 royalties, less whatever sum the jury should find had been paid, unless they believed from the evidence that the plaintiff had breached the contract by interfering with and preventing the defendant from mining the stipulated quantity of coal. This instruction was approved on the first appeal. Instruction No. 2 authorized a verdict for the defendant if the jury believed that New had breached his contract by permitting others to mine coal from the property while the contract was in force and interfered with the defendant stripping the land, or made conditions such that he could not continue doing so. The measure of recovery, if any should be awarded, was stated to be the amount the defendant's operations and expenditures had increased the value of the plaintiff's property. This instruction was not given on the first trial. The expenditures made by the lessee were in opening up and in operating the mine. According to his claim, before he could use the preparations thus made to the end and complete his contract, he was prevented by the plaintiff. All of this was an expense incurred by the lessee in accordance with the terms of the contract, and it would have been spread over the entire period as an expense of operation. It seems to us that if the plaintiff breached the contract and prevented the defendant performing it, the measure of his recovery is the net profit he could reasonably have made and not the enhancement of the lessor's property. The defendant had prayed for the recovery of lost profits, and the first opinion indicated that was the proper measure of damages. But the evidence was not directed to that end. On his counterclaim the defendant should have shown the quantity of coal he could have produced if he had not been interfered with, the probable cost and expense, and his net profits. Harness v. Kentucky Fluor Spar Company, 149 Ky. 65, 147 S. W. 934, Ann. Cas.

1914A, 803; Columbus Mining Company v. Ross, 218 Ky. 98, 290 S. W. 1052, 50 A. L. R. 1394; Blue Diamond Coal Company v. Robertson, 235 Ky. 425, 31 S. W. (2d) 701.

In view of the condition of the record, we will not pass upon any other point in order that the parties may not be affected by the law of the case rule.

Judgment reversed.