# Kentucky River Coal Corporation et al. v. Culton.

Dec. 9, 1938.

M. C. BEGLEY and P. T. WHEELER for appellants.

C. K. CALVERT, C. W. HOSKINS and A. T. W. MANNING for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

Appellee, J. M. Culton, filed this action against appellants, Kentucky River Coal Corporation et al., alleging that he was the owner of a tract of land in Leslie County, in which he sought an injunction against the defendant for cutting timber on the land and prayed that he be adjudged the owner of it. Appellants answered, claiming to be the owner thereof and on final hearing the court adjudged the appellee to be the owner of the land and this appeal follows.

On June 16, 1932, A. J. Asher conveyed the tract of land to appellee, but this deed was not recorded until October 27, 1933.

Prior to November 14, 1932, there was issued from the sheriff's office of the Bell circuit court an execution on a replevin bond in favor of Morris Euster and Rosa Euster against A. J. Asher and another, directed to the sheriff of Leslie county, and this execution was levied on lands of A. J. Asher, including the land in controversy, and under this execution and levy the land was sold by the sheriff on November 14, 1932, at which sale the Eusters became the purchasers for their debt, interest and costs. This execution was levied on the land on September 29, 1932, and at this time the Eusters recorded in the Leslie county clerk's office a lis pendens notice of the execution.

On August 21, 1933, Asher's equity of redemption in the land was sold under execution by the United States Marshal, at which sale the appellant became the purchaser of the equity of redemption. On October 28, 1933, the day following the recording of appellee's deed to the land, the Eusters sold and assigned their judgment, execution, replevin bond and purchase to the appellant, and on November 15, 1933 the sheriff of Leslie county, pursuant to this assignment, executed deed for the land to the appellant.

It will thus be seen that at the time of the purchase of Asher's equity of redemption in the land by appellant, as well as at the time of the Eusters' purchase of the land under the execution sale, appellee's deed from Asher was not of record. Neither the appellants nor either of the Eusters had any knowledge of appellee's unrecorded deed at the times of their respective purchases. This was alleged in the third paragraph of appellants' answer and not denied.

The ruling of the lower court in adjudging appellee to be the owner of the land is based on the opinion of this court in the case of Hopkins v. Slusher, 266 Ky. 300, 98 S. W. (2d) 932, 108 A. L. R. 662, which holds that the validity of an execution issued as foundation for a sheriff's sale must be established by proof of the judgment. In the present case the judgment was not introduced in evidence, but appellants did introduce in evidence as a foundation for the execution, under which the sale was made, a replevin bond signed by Asher. Appellants con-

tend that the rule enunciated in the case of Hopkins v. Slusher, supra, does not apply where the judgment has been replevied.

The principle has been definitely established in this state that in the ordinary case, in order to sustain the title of one claiming under an execution sale, there must be introduced in evidence a valid judgment on which the execution was issued. The case of Hopkins v. Slusher, supra, reviews many of the older cases holding this and reaffirms it in no uncertain terms.

However, no case has been cited, and we are unable to find any, which holds that the judgment must be proven where the judgment has been replevied. On the contrary, the early case of Floyd v. McKinney, 10 B. Mon. 89, holds that it is sufficient to introduce in evidence the replevin bond, where the judgment has been replevied, the court saying:

> "It seems to us that the replevin bond upholds the sale. The statute provides, that after a replevin bond .shall fall due, the proper officer shall at the request of the plaintiff, or his attorney, 'issue execution thereon as on a judgment, and such bond shall have the force of a judgment, and be taken and treated as such:' (1 Stat. Laws of Kentucky, 643.) If this bond has the force of a judgment, then as the defendant voluntarily entered into it, he cannot, in this action, require the plaintiff to go behind the bond, and produce a valid judgment to sustain the bond. A sale, by virtue of an execution on the bond, is as valid as if it had issued on a valid judgment. If the replevin bond was defective, or was taken by the Sheriff without lawful authority, or if it was based upon an execution improperly issued on an invalid judgment, his remedy was to have it quashed, on motion, or, by other proceedings, annulled. He cannot be permitted to assail it in the action of ejectment against him."

We have been unable to find any case in which this rule has been departed from in Kentucky and the decisions of this court have uniformly held that a judgment is extinguished by the execution of a replevin bond. Section 1676 of the Statutes provides that a replevin bond has "the force and effect of a judgment," and the case of Shaw et al. v. McKnight-Keaton Grocery ·Co., 231 Ky. 223, 21 S. W. (2d) 269, in speaking of replevin

bonds, says [page 271], "Whilst styled bonds, they are in truth equivalent to judgments. * * * A judgment is extinguished by the execution of a replevin bond, and proceedings thereafter must be upon the bond in which the judgment is merged." The earlier cases laying down this rule are collated in this later case of Shaw et al. v. McKnight-Keaton Grocery Co., supra, and it is not necessary to do so again here.

As the statute, itself, provides that the replevin bond has the force and effect of a judgment, and as the rule is definitely established in this state that the execution of a replevin bond extinguishes a judgment and it is merged in the bond, it seems obvious there is no reason in requiring the judgment to be proven. All proceedings thereafter must be on the replevin bond and it is prima facie evidence of the validity of the judgment replevied by it. If the judgment was void, the only way the judgment defendant and surety on the replevin bond could avoid the bond would be to make a motion to quash the bond and proceedings thereunder.

The purpose of proving the judgment is to show a foundation for the execution. When a replevin bond is executed the judgment is extinguished and merged in the bond. The bond thereby becomes the foundation supporting the execution.

We are of the opinion therefore that the court was in error in holding that it was necessary to prove the judgment in this case. Appellants put in evidence the replevin bond on which the execution was issued and in our opinion this was sufficient.

Appellee insists that even though the court might be of the opinion that it was sufficient to put in evidence the replevin bond as a foundation for the execution under which the land was sold, yet the appellant is not a bona fide purchaser within the meaning of Section 496, Kentucky Statutes, because it took the assignment of the Eusters' purchase at the execution sale and paid to them the amount of the purchase money after appellee's deed was recorded.

However, it will be remembered that appellant became the purchaser of Asher's equity of redemption before appellee's deed was recorded and as to this equity of redemption it was unquestionably a bona fide purchaser. The Eusters also were undoubtedly bona fide

purchasers of the land at the execution sale and they had duly recorded a lis pendens notice of the execution in the county clerk's office before appellee's deed was recorded and had actually become purchasers before such recording.

As appellant was the owner of the equity of redemption, it had the right to redeem the land at any time before the expiration of one year from the date of the execution sale and when it paid the amount due under the execution to the Eusters and took an assignment of their purchase this transaction amounted, in effect, to no more than a redemption of the land by appellant. When it took the assignment of the Eusters' purchase it simply stepped into the place of the Eusters and, the Eusters being bona fide purchasers and entitled to a deed at the proper time which would take precedence over appellee's deed even after it was recorded, the appellant standing in their place was also entitled to a deed which would take precedence over appellee's deed.

The sheriff's deed to appellant, executed pursuant to the assignment, relates back to the time of the levy by the Eusters and the title to the land vested in appellant as of the date of the levy under which the Eusters purchased. The correct rule along this line is stated in the case of Greer v. Wintersmith, 85 Ky. 516, 4 S. W. 232, 9 Ky. Law Rep. 96, 7 Am. St. Rep. 613, as follows [page 234]:

"* * * the sheriff's deed must be 'given such an effect as will preserve and make effectual the lien under which the execution sale was made;' and, in order that the deed may have such an effect, 'it takes precedence over subsequent liens and transfers; and a sale and convyance, based upon such lien, transfer to the purchaser all the title which the defendant held when such original lien attached. To this extent, the deed, when executed, takes effect by relation, and must be treated as though made on the day when the lien was created.' See Freem. Ex'ns, sec. 333; Million v. Riley, 1 Dana [359] 360 [25 Am. Dec. 149]."

See, also, Rouse et al. v. Craig Realty Co., 203 Ky. 697, 262 S. W. 1083.

The situation here is somewhat analogous to the case where a negotiable instrument is held by a party

who has notice of its infirmity, but who took title from, and claims through, a bona fide holder. In such case notice of infirmity by the holder is not a good defense where he pleads and proves that his title is derived from and through a bona fide holder without notice of infirmity. In this case the Eusters were bona fide purchasers, entitled to a deed taking precedence over appellee's deed and appellant acquires this same right by virtue of its assignment from the Eusters all the more is this so, since it was a bona fide purchaser without notice of the equity of redemption.

Appellee further insists that the sheriff's levy describing "all right, title and interest of A. J. Asher," did not include the land conveyed to Culton and conferred no right upon the purchaser at the execution sale because Asher had already divested himself of title by the unrecorded deed to Culton.

We are unable to extend much consideration to this line of argument for to do so would be completely to emasculate Section 496, Kentucky Statutes. By this section, an unrecorded deed is void as to purchasers and this unrecorded deed from Asher to Culton was, as to appellant's purchase and the Eusters' levy, void and of no effect and no title passed to Culton by it as against them. Asher was therefore, as far as appellant and the Eusters were concerned, the owner of the land, or whatever interest he owned therein, at the time of the purchase by appellant of the equity of redemption and at the time of the levy by the Eusters and their purchase at the execution sale. The purchase of the equity of redemption and sheriff's deed pursuant to execution sale operated to vest appellant with all title of Asher to the land just as if the deed from Asher to Culton had never been executed.

Wherefore, the judgment is reversed with directions to enter a judgment in conformity with this opinion.