**ROWE et al. v. BLACKBURN et al.**

Court of Appeals of Kentucky.
June 13, 1952.

As Modified on Denial of Rehearing
Dec. 19, 1952.

P. B. Stratton, Pikeville, for appellant.

Russell Vanover, J. E. Childers, Pikeville, for appellee.

STEWART, Justice.

This suit was instituted to enjoin defendants from trespassing upon land claimed to be owned by plaintiffs and to recover $9,000 as the value of coal asserted to have been removed therefrom. The defense was a plea that defendants are the owners of the property upon which the alleged trespass was being committed and from which the coal had been taken. The Chancellor dismissed the petition and plaintiffs appeal from a judgment adverse to them.

Appellees allege ownership of the real estate involved through a patent of 50 acres issued by the Commonwealth of Kentucky to David Layne dated December 11, 1840. They trace their title to David Layne by an unbroken chain of conveyances about which there seems to be no question. They also maintain they own the land by adverse possession. Appellants claim title to the boundary of land in controversy through a patent of 50 acres issued on November 4, 1857, to Charles Rowe by the Commonwealth of Kentucky. Appellants aver they are the heirs-at-law of Charles Rowe. The two tracts embraced by the patents lie on Lick Creek in Pike County.

The question presented on this appeal is: Within the boundary lines of which patent is the land in dispute situated? The answer to this query is complicated by the fact that there is much uncertainty as to the location of the David Layne and the Charles Rowe patents.

Alonzo Ford, a surveyor of many years' experience, undertook to locate the Rowe patent. He did not find a single corner

marker or natural object referred to in the description of this patent. He testified that he found a white oak tree, which was dead at the time, that he thinks was one of the corner markers of the tract, but this tree did not have any identification of any kind on it to indicate it was a marker. Speaking of how he undertook to determine where the Rowe patent lies, he said: "I made what I believe is the correct location of it. But I did not survey any of the patents. I surveyed the general lay of the ground on all the work I did and platted the patent on after I figured where the locations of them were." He concluded that the parcel of land in litigation was situated without the Layne patent, although he admits he made no actual survey of the Layne or the Rowe patents.

Arthur Fields, who went upon the ground and made a survey for appellees, stated that there was an overlap between the Rowe patent and the Layne patent and that the tract of land in dispute was within the overlap and therefore within the boundary of the Layne patent. The Layne patent begins at a beech tree and a maple tree but the maple is gone, he stated. We quote the starting point as described in that patent: "Beginning at a beech and maple standing on the north side of said creek at the foot of a hill about three-fourths of a mile above the mouth of said creek." Fields testified that in making his survey he located the beech tree, which was on the north side of Lick Creek at the foot of a hill and at a spot about three-quarters of a mile from the mouth of the creek. This conforms to the description of the beginning point in the Layne patent, assuming that the maple tree was once a marker at the same spot but is now gone. He further testified that the beech tree bore indications of a corner tree, as it had old marks on it. The beech was a good-sized tree, he said, about as large as it will ever be. Starting with the beech tree, his survey, he testified, inclosed the land in controversy within the Layne patent.

If the beech tree was correctly located, there can be no doubt but that the Rowe patent overlaps the Layne patent. Appellants admit that, as to any overlapping, the Layne patent, which is the older, is su-

perior. See Moore v. Marcum, 269 Ky. 101, 106 S.W.2d 117.

Many witnesses appeared in behalf of appellees who testified that the beech tree is a corner marker. John H. Blair, a veteran land surveyor and a civil engineer in the employ of the Kentland Coal and Coke Company, testified that in his opinion the beech tree located by Fields is the beginning corner of the Layne patent. Many of the older men in the community, called as witnesses for appellees, such as W. H. Belcher, Moscoe Belcher, and A. Belcher, pointed out the beech tree as one of the corners of the Layne patent. Joseph Cool, a witness for appellants, speaking of the marks on this beech tree, said: "They're old, growed and sunk in the bark; been marked a long time."

Floyd Bishop testified that many years ago there was a controversy over the dividing line of the Rowe and the David Layne patents between the Rowe family and his father, W. E. Bishop, who then owned the Layne patent, and that they employed a surveyor named Griffith to locate the dividing line. This witness testified that the land in controversy in this suit, as located by Griffith, is within the Layne patent. Apparently there has been no dispute since that time over the line between the two patents until recent coal operations were begun in this area and mines were sunk on the tract in litigation.

The main contention of appellants is that the Layne patent, as located by Fields, contains a much greater area than that called for in the patent. It is true that this assertion does cast a doubt upon the correctness of the Fields survey. However, the issue in this case is the boundary line between the Layne and the Rowe patents and not the area of land embraced in the Layne patent. It appears that the great preponderance of evidence, both expert and lay, sustains appellees' contention that the beech tree is the beginning corner of the Layne patent and that this patent covers the land involved in this suit. On the other hand, appellants were unable to establish with any degree of certainty any marker or natural object called for in the description of the Rowe patent. The burden of proof

as to the boundary of the land claimed by appellants was upon them and where there is confusion, as here, the doubt should be resolved against them. Green v. Witten, 200 Ky. 725, 255 S.W. 519. It is the rule that, where this Court cannot say on an appeal from the decree in an action involving a boundary dispute that the Chancellor's adjudication is against the weight of the evidence, the decree will not be disturbed. Wood v. Harmon, 288 Ky. 746, 157 S.W.2d 292.

The decision we have reached renders it unnecessary to consider appellees' claim of title to the tract in dispute by adverse possession.

Wherefore, the judgment is affirmed